**Sylvia TREVINO–BARTON, Appellant,**

v.

**PITTSBURGH NATIONAL BANK d/b/a PNC Investment Company/PNB.**

No. 90–3109.

United States Court of Appeals, Third Circuit.

Argued Aug. 22, 1990.

Decided Nov. 28, 1990.

Mark J. Homyak (argued), Hess, Reich, Georgiades, Wile & Homyak, P.C., Pittsburgh, Pa., for appellant.

Laura A. Candris (argued), Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., for appellee.

Before STAPLETON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Sylvia Ann Trevino–Barton ("Trevino") complained to both the Equal Employment Opportunities Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") about sex discrimination on the part of her employer, Pittsburgh National Bank. Proper filing of a complaint with the EEOC is a jurisdictional prerequisite to bringing a Title VII claim in federal court. Although Trevino's filing with the EEOC would otherwise be valid, the bank argues—and the district court held—that Trevino's earlier filing of a letter with the PHRC deprived the EEOC, and the federal courts, of jurisdiction. Such a result is not required by the statute's language and directly thwarts Congress' intent to make Title VII broadly enforceable. Accordingly, we will reverse the district court's judgment on Trevino's Title VII claim.[1]

### I.

On June 22, 1987, Trevino filed a letter with the PHRC, alleging that her employer had discriminated against her on the basis of her sex. The letter stated explicitly that Trevino wished to receive a right-to-sue letter as quickly as possible and was writing to the PHRC only because she believed that was a necessary step to bringing her claim to the EEOC. A copy of her letter was sent to the EEOC.

This case was filed on July 1, 1987 alleging violations of the Federal Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA"), and pendent state law claims. As originally filed, the complaint alleged no claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., ("Title VII").

When the EEOC received its copy of Trevino's letter to the PHRC, its investigator mailed her counsel a draft of a formal charge. The requisite interview with the EEOC investigator was held and a formal, signed charge on an EEOC form was lodged with the EEOC. This charge al-

---

1. Having found that Trevino filed a valid claim with the EEOC, we need not reach her argument that the district court should have held her case in abeyance to allow Trevino to refile with the PHRC.

leged sexual discrimination and illegal retaliation for protected activity, both under Title VII.

The PHRC and the EEOC have a work-sharing agreement in which they divide responsibility for the initial processing of complaints. Under the terms of that agreement each agency waives its right to initially review claims that are first filed with the other agency. The agencies communicate with each other, however, and under the agreement an agency may request the right to initially process any case that it feels is of special interest to it.

On July 10, 1987, the EEOC transmitted Trevino's EEOC charge to the PHRC with a covering form letter. The form letter provided the following information:

SUBJECT: CHARGE TRANSMITTAL      PNC Investment Corp.
Sylvia Ann Trevino–Barton    v.    Pittsburgh National Bank

(Charging Party)          (Respondent)

Transmitted herewith is a charge of employment discrimination initially received by the:

x EEOC_____P.H.R.C.          on      07/06/87
         (Name of FEPA)          (Date of Receipt)

x Pursuant to the worksharing agreement, this charge is to be initially processed by the EEOC.

_ Pursuant to the worksharing agreement, this charge is to be initially processed by the FEPA.

_ The worksharing agreement does not determine which agency is to initially process the charge.

The EEOC thus advised the PHRC that the EEOC regarded Trevino's claim as having been initially received by it and that the EEOC would initially process the claim. The PHRC never responded to this notice and on July 20, 1987, the EEOC issued a right to sue letter. Trevino amended her complaint on July 23, 1987 to include the alleged violations of Title VII.

After Trevino received her EEOC right-to-sue letter and amended her complaint to include the Title VII claims, the PHRC sent her two letters—on July 28, 1987 and August 3, 1987—asking for further information regarding her claim. The July 28th letter advised as follows:

IF YOU WISH TO HAVE THE PHRC, in addition to EEOC, PROCESS YOUR CHARGE, YOU MUST CONTACT A PENNSYLVANIA HUMAN RELATIONS COMMISSION OFFICE WITHIN THIRTY DAYS FROM THE RECEIPT OF THIS LETTER.

If you do not contact the PHRC within 30 days, your complaint will not be processed by the PHRC and you will lose your rights to relief under Pennsylvania law. Failure to contact the PHRC will not affect your Federal rights.

Trevino never responded to these letters.

On November 9, 1989, the district court adopted a magistrate's report and recommendation and entered summary judgment in favor of the bank on Trevino's Title VII and Equal Pay Act salary claims. The court declined, however, to enter summary judgment on the Equal Pay Act incentive compensation claim. On February 15, 1989, however, the parties stipulated to a dismissal without prejudice of Trevino's claim for incentive compensation. The district court approved the stipulation on February 21, 1990.

On February 27, 1990, Trevino filed a notice of appeal from "the Order dismissing Plaintiff's claims under the Equal Pay Act entered in this action on the 21st day of February 1990." The bank promptly filed a motion to dismiss for lack of appellate jurisdiction.

II.

The bank's motion to dismiss alleges two obstacles to this court's jurisdiction under

28 U.S.C. § 1291 to review final judgments of the district courts. First, the bank claims that because Trevino failed to designate in her notice of appeal that she was appealing the district court's dismissal of her Title VII claims, that dismissal is not properly before this court. Second, the bank claims that, because the February 21, 1990 order referenced in the notice of appeal was a stipulated dismissal without prejudice, that order is not a final adverse judgment and is thus not appealable.

## A.

■ Trevino's notice of appeal referred only to the February 21, 1990 order dismissing Trevino's incentive compensation claim under the Equal Pay Act. The bank claims that this is insufficient to confer appellate jurisdiction to review the district court's earlier order granting summary judgment to the bank on Trevino's other claims.

Even if we were to find that the notice of appeal was itself insufficient, we are not without jurisdiction to review the summary judgment order eliminating Trevino's Title VII claim. The Civil Appeal Information sheet was filed within the thirty day time limit for filing notices of appeal, Fed.R. App.P. 4, and could serve as the "functional equivalent" of an appropriately specific notice of appeal because it accurately described the issues being appealed. As the Supreme Court restated in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988):

the requirements of the rules of procedure should be liberally construed and [ ]

"mere technicalities" should not stand in the way of consideration of a case on its merits. Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant's action is the functional equivalent of what the rule requires.

108 S.Ct. at 2408–09 (citations omitted).[2]

This court has previously found that other documents can supply deficiencies in the notice of appeal if they are timely filed. For example, we found that a consent order could serve as a "functional equivalent" when "[it] was filed within the time for filing an appeal ... [and] served to notify the court and the opposing parties of [appellants'] intention to appeal." *Dura Sys. Inc. v. Rothbury Inv. Ltd.*, 886 F.2d 551, 555 (3d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990). In circumstances similar to this case, we have concluded that because "the [civil appeal information sheet and attorney appearance form] do, when considered along with the original notice of appeal, satisfy the requirements of Rule 3(c), we believe *Dura Systems* requires us to deny [the] motion to dismiss." *Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 666 (3d Cir.1990). Accordingly, we have jurisdiction over the order eliminating Trevino's Title VII claim.[3]

## B.

■ This court has recognized that "[s]ettled policy in the federal courts discourages piecemeal appeals and, so, gener-

---

**2.** Furthermore, the very rule that requires specificity in notices of appeals states that, "An appeal shall not be dismissed for informality of form or title of the notice of appeal." Fed.R. App.P. 3(c); *see also* Third Circuit Court Rule 8(1).

**3.** While we need not reach the issue, the notice of appeal also may have been sufficient to satisfy Fed.R.App.P. 3(c), even standing by itself. This court has not faced the exact problem presented by this case since *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (specifying party's name in notice of appeal prerequisite for appellate jurisdiction). However, in *Murray v. Commercial*

*Union Insur.*, 782 F.2d 432, 434–45 (3d Cir.1986), we found that a notice of appeal from the order disposing of plaintiff's only remaining claim also conferred appellate jurisdiction over the earlier dismissal of other claims. *Murray* appears to survive *Torres. See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 858 (3d Cir. 1990); *Williams v. Guzzardi*, 875 F.2d 46, 49 (3d Cir.1989) (both citing *Murray* with approval); *see also In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 845–46 (3d Cir.1990); *Silver v. Mendel*, 894 F.2d 598, 601 (3d Cir.1990). If *Murray* continues to be good law, the notice of appeal standing alone is sufficient to confer appellate jurisdiction over Trevino's Title VII claim.

ally recourse may be had to appellate tribunals only when final orders are the subject of review." *Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976). As a result,

> [g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action. Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable.

*Id.* at 951–52. Making an exception in cases where the plaintiff either is barred from reasserting or has abandoned the remaining claim does not compromise the policy underlying the final judgment rule: if plaintiff cannot or will not bring a second action, there is no risk of multiple litigation.

Trevino's response to the bank's motion to dismiss this appeal states that she abandons her Equal Pay Act incentive compensation claim.[4] This provides adequate assurance against piecemeal litigation. *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1157 (3d Cir.1986), *cert. denied sub nom. Turgiss v. Fassett,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987) (order which dismisses complaint without prejudice is final and appealable if the plaintiff declares his intention to take no further action).

The bank also claims that because the February order approved a stipulated dismissal, it is not adverse and therefore not appealable. "We agree with appellant [Trevino] that the judgment below is appealable since appellant's solicitation of the formal dismissal was designed only to expedite review of an order which had in effect dismissed appellant's complaint." *Raceway Properties Inc. v. Emprise Corp.,* 613 F.2d 656, 657 (6th Cir.1980); *see*

*also Bogorad v. Eli Lilly & Co.,* 768 F.2d 93, 94 (6th Cir.1985); *accord Dorse v. Armstrong World Indus.,* 798 F.2d 1372, 1376–77 (11th Cir.1986).

When a plaintiff has had all but one of her claims dismissed and is willing to abandon the remaining claim, a stipulation agreeing to the dismissal of the remaining claim promotes judicial economy by eliminating unnecessary proceedings at the trial level without posing any danger of piecemeal litigation. Although the entry of the final order in such a situation is in one sense invited, the reality of the matter is that the plaintiff has suffered an adverse judgment.

In sum, we find that the February order was final, adverse, and so appealable.

### III.

The parties agree that there are no disputes of material fact. The court of appeals exercises plenary review over an appeal from the granting of a summary judgment motion, "apply[ing] the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### A.

Federal courts lack jurisdiction to hear Title VII claims unless a claim was previously filed with the EEOC. *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Under the

---

**4.** *See* Plaintiff's Brief in Support of their Response to Motion to Dismiss (filed Apr. 25, 1990) at 4.

The order may also be final because the statute of limitations had already run by February 1990. *See Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1155 (3d Cir.1986), *cert. denied sub nom. Turgiss v. Fassett,* 481 U.S. 1070, 107 S.Ct.

2463, 95 L.Ed.2d 872 (1987). However, it is not clear from the complaint whether plaintiff's claim for incentive compensation alleges a willful violation of Equal Pay Act, in which case the statute of limitations would *not* have run. We need not decide this issue because there is an alternate ground for determining that the order was final.

statutory scheme, no charge may be filed with the EEOC in a state, such as Pennsylvania, which provides an administrative remedy for discrimination until the charge is first filed with the state agency and either (1) sixty days elapses or (2) the agency terminates its proceedings. § 706(c) of Title VII, 78 Stat. 260, as amended in 1972, 86 Stat. 104, 42 U.S.C. § 2000e–5(c); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 817, 100 S.Ct. 2486, 2492–93, 65 L.Ed.2d 532 (1980).

However, like the vast majority of states and local anti-discrimination agencies, the PHRC entered into a worksharing agreement with the EEOC. Under the worksharing agreement, a charge that would otherwise have to come before the PHRC, can be processed immediately by the EEOC if it is first filed with the EEOC. See Appendix 29a ("Workshare Agreement") at 33a, ¶ III(b) ("the PHRC waives the rights granted to it under ... Title VII to have exclusive opportunity for 60 days to resolve the Title VII charges assigned to EEOC.").

In *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the Supreme Court held that "a state agency's waiver of the 60–day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a 'termination' of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately." *Id.* 108 S.Ct. at 1669. The Supreme Court specifically found that the states were free to determine their own interests. "The respondent's argument that States should not be permitted to waive the deferral period because its creation reflected a congressional preference for state as opposed to federal enforcement [was found to be] entirely at odds with the voluntarism stressed by the proponents of deferral." *Id.* at 1672–73. In the course of holding that a state agency could waive its statutory rights and allow the EEOC to begin proceedings on claims immediately under a worksharing agreement, the Supreme Court stressed that any other result would unnecessarily delay, and even bar, claims. *Id.* at 1674. This holding was consistent with prior decisions by lower courts finding

that plaintiffs in states with worksharing agreements could proceed even by filing only with the EEOC. *See, e.g. Douglas v. Red Carpet Corp.*, 538 F.Supp. 1135 (E.D. Pa.1982).

In *Commercial Office Products*, the state agency explicitly waived its rights over the particular claim by sending a letter to the EEOC. *Id.* at 1670. However, courts of appeals have consistently found that under the rationale of *Commercial Office Products*, the waivers in worksharing agreements should be treated as self-executing. *See EEOC v. Techalloy Maryland, Inc.*, 894 F.2d 676 (4th Cir.1990); *Griffin v. Air Products and Chemicals, Inc.*, 883 F.2d 940, 943 (11th Cir.1989) ("We conclude that the [ ] worksharing agreement created an instantaneous 'constructive termination' ..."); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472 (9th Cir.1989).

### B.

■ Against this background, the question becomes what effect Trevino's filing of a letter with the PHRC should have on her otherwise valid filing with the EEOC. We conclude that the answer must be none.

Under *Commercial Office Products* and the worksharing agreement, Trevino was entitled to file her charge with the EEOC only. She did file with the EEOC and it processed her charge in exactly the same manner it would have processed that charge had it been the only one filed. Trevino's employer received precisely the same procedural rights and wound up in precisely the same position that it would have occupied had she exercised her option of filing only with the EEOC. Thus, so far as the employer is concerned, we believe that it has no just cause for complaint.

So far as the PHRC is concerned, if Trevino had exercised her right to file only with the EEOC, the PHRC—by its execution of the worksharing agreement—would clearly have waived its right to initially consider her claim. Indeed, the same would have been true if Trevino had exercised her right to file first with the EEOC

and then, subsequently, with the PHRC. The PHRC wound up in no different position than it would have been in had Trevino chosen either of these available options.[5]

More importantly, in light of the scheme established in the worksharing agreement, we think it significant that the PHRC was expressly advised in writing that the EEOC viewed this matter as having originated with it and that it was processing this matter in accordance with that view. The first filed rule established by the worksharing agreement is obviously a rule of convenience unrelated to any particular special interest that the state may have. It represents an effort to assign workload on the basis of a standard that, while arbitrary, will be relatively easy to apply. Nevertheless, writings received by the agencies inevitably will fall at various points along a spectrum from formal charges on agency forms to very informal inquiries, and for this reason as well as others, some confusion in applying the first filed rule was foreseeable. Accordingly, the agencies recognized the necessity for inter-agency communication and developed forms for this purpose. In this case, the EEOC dispatched such a form to the PHRC stating its view that Trevino's charge should be treated as first filed with it. The PHRC apparently acceded to this view of the matter. We believe the EEOC and the PHRC, when they negotiated the work sharing agreement and developed their forms, must have contemplated that a charge under these circumstances would be regarded as one filed initially with the EEOC.

We thus perceive no significant rights of the employer or the PHRC that would be sacrificed by giving Trevino the benefit of her filing with the EEOC. At the same time, we believe that the Congressional will reflected in Title VII weighs heavily in favor of upholding Trevino's right to proceed before the district court.

■ The bank essentially argues that a literal reading of § 706(c) of Title VII requires us to reach a result that is not required by the purpose of that section and is antithetical to the overall remedial purpose of Title VII. The Supreme Court rejected precisely this kind of argument in *Commercial Office Products*, and we reject it based on the authority of that case.

As we have noted, under § 706(c), no charge may be filed with the EEOC until 60 days have elapsed from the initial filing of a charge with the authorized state agency, unless that agency's proceedings "have been earlier terminated." In *Commercial Office Products*, the Supreme Court construed "termination" liberally in order to serve the purposes of § 706(c) of Title VII. It held that the filing of a charge with the EEOC with respect to which the state agency had waived its right of initial review in a worksharing agreement, effects an automatic "termination" of the state proceeding for the purposes of § 706(c) even where the state agency expressly reserves jurisdiction to consider the charge after the EEOC has completed its proceedings.

Based on the purpose of § 706(c) and Title VII and on the evident intent of the EEOC and the PHRC when they negotiated their agreement, we hold that the worksharing agreement before us effected a "termination" for the purposes of § 706(c) when the EEOC identified the charge as a state waiver case in a communication to the PHRC and the PHRC tacitly acceded to that characterization.

## IV. *CONCLUSION*

The civil information sheet, when combined with the notice of appeal, supplied the specificity required by Fed.R.App.P. 3(c) and so conferred jurisdiction on us to review the district court's dismissal of Trevino's Title VII claims. Because Trevino affirmatively abandoned the Equal Pay Act incentive compensation claim that was dismissed without prejudice, the district court's approval of the stipulated dismissal was a final order. The intent of Congress in passing Title VII and the intent of the PHRC and the EEOC in entering into a

---

5. In this case, the PHRC had the same opportunity to make a special request for the right to initially review the complaint that it would have had under either of the other two scenarios.

worksharing agreement are both best effected by finding that plaintiff's filing with the EEOC was not invalidated by her earlier letter to the PHRC. Accordingly, we will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.