Johnny C. BROWN, Plaintiff–Appellant,

v.

Ann CROWE, Defendant,

Martin Marietta Energy Systems, Inc., Defendant–Appellee.

No. 91–6071.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1992.

Decided May 11, 1992.

Dorothy B. Stulberg (argued and briefed), Mostoller & Stulberg, Oak Ridge, Tenn., for plaintiff-appellant.

E.H. Rayson (argued), Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., Patricia L. McNutt (briefed), G. Wilson Horde, Oak Ridge, Tenn., for defendant-appellee.

John F. Suhre, E.E.O.C., Office of the Gen. Counsel, Washington, D.C. (argued and briefed), for E.E.O.C., amicus curiae.

Before: MERRITT, Chief Judge; MARTIN and SILER, Circuit Judges.

MERRITT, Chief Judge.

After the plaintiff in this Title VII case was first fired, then recalled and demoted by his employer, he filed a charge of race discrimination with a state human rights commission that acted in concert with the EEOC under the provisions of a workshar-

ing agreement between the two agencies. The resulting bureaucratic morass that followed, through no fault of the plaintiff, is what we must now consider. This appeal concerns whether a plaintiff's filing of a Title VII charge with a state agency, whose subsequent actions cause that charge not to meet statutory time requirements, should be considered to have been filed with the EEOC in a timely manner. We apply the doctrine of equitable tolling and hold that the statutory period of Title VII is tolled where, through no fault of the plaintiff, the procedural errors of a state administrative agency would otherwise defeat the plaintiff's right to litigate his case. We therefore reverse the judgment of the District Court and remand the case for further proceedings.

## I.

Under Title VII's § 706(e), the general rule is that charges are to be filed with the EEOC within 180 days of the alleged discriminatory act, with one exception: where proceedings have been filed with a state or local agency first, "such charge shall be filed ... within three hundred days" of discrimination or within thirty days of the termination of state or local proceedings, "whichever is earlier." 42 U.S.C.A. § 2000 e–5(e) (West 1981). Under § 706(c), when a discrimination charge arises in a state which has a state or local law prohibiting the discriminatory act alleged or where a state or local authority is empowered to grant or seek relief from such an act, "no charge may be filed under subsection (b) [which provides for filing of charges with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...." 42 U.S.C.A § 2000e–5(c) (West 1981). Read together, if a plaintiff does not file a charge under the general 180–day rule, the 60–day deferral period of § 706(c) gives a state agency "an opportunity to combat discrimination free from federal intervention." *EEOC v.*

*Commercial Office Products Co.,* 486 U.S. 107, 110–11, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). In light of that 60–day period, "a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed with the EEOC within the 300–day limit." *Id.* at 111, 108 S.Ct. at 1669, *citing Mohasco Corp. v. Silver,* 447 U.S. 807, 814, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980). "If the complainant does not file within 240 days, the charge may still be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days." *Id.* at 111–12, 108 S.Ct. at 1669.

Plaintiff Brown, an African–American male, was employed by the defendant Martin Marietta Energy Systems for fourteen years, rising from a job as a janitor to become a program finance officer and administrator. On January 14, 1988, the plaintiff was terminated from his position as a finance officer. He was recalled the next day and was told that his termination would be "converted" to a transfer and a demotion to his original job as a janitor.

179 days after his initial termination Brown contacted the EEOC's Nashville office by mail. Some two months later, the plaintiff submitted a charge of discrimination, which was received by the Tennessee Human Rights Commission ("THRC") on September 30, 1988. Under the terms of a worksharing agreement between the EEOC and the THRC, a THRC clerk assigned charge numbers for both agencies' files at that time. The THRC forwarded it to the EEOC, which received it on October 7, 1988. When the THRC forwarded the charge, it used a standardized form[1] that contained three blocks for noting which agency planned to process initially the charge. The THRC marked one block, reading that "[p]ursuant to the work-sharing agreement, this charge is to be initially processed by the 706 Agency."

1. For an example of a similar transmittal form between a state agency and the EEOC, see *Trevi-*

*no–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 876 (3rd Cir.1990).

The plaintiff's charge had originated in Monroe County, a county for which the THRC bore initial processing responsibility under the worksharing agreement. But, the plaintiff also alleged ongoing discrimination and retaliation under Title VII, and under the worksharing agreement, such charges were part of a category of claims that the EEOC would initially process and that the THRC would waive its rights to handle. Moreover, 255 days had elapsed between the day he was terminated and the date the charge was filed. To be timely under Tennessee law, charges must be brought within 180 days of the alleged discrimination. Under the worksharing agreement, the THRC had agreed to "defer immediately to EEOC all charges received and determined as untimely under Tennessee law" for a failure to meet the state's 180–day filing deadline.

After conducting an initial investigation, the EEOC notified the THRC on October 17, 1988 that it would not pursue further processing of plaintiff's charge. THRC now began an investigation, issuing a notice of administrative closure on April 3, 1990. A right-to-sue notice was issued to Brown on the same day. Well over 300 days had elapsed between the termination and the state agency's closure of its proceedings.

The District Court granted the defendant's motion for summary judgment on two grounds: first, that the plaintiff had not filed a charge with the EEOC within 240 days, and second, that the THRC had not terminated its inquiries within the 300–day period required by Title VII's § 706(e). The District Court did not address the effect of the worksharing agreement's waiv-

er provisions, nor was it asked to consider whether equitable principles should operate to toll the filing requirements for the plaintiff.

## II.

Plaintiff and amicus curiae EEOC urge us to resolve whether the worksharing provision's waiver sections are self-executing so that, regardless of the THRC's annotation on the transmittal form, an "automatic waiver" of its processing rights had occurred.[2] We need not resolve this complex issue, however, because we believe that the doctrine of equitable tolling provides appropriate relief, although some brief analysis of Title VII's timeliness provisions is necessary to resolve the threshold issue we face. As a threshold matter, we address this court's power *sua sponte* to consider the equitable tolling issue, which is obviously latent in the case.

As a general rule, this court will usually decline to entertain arguments not presented in the first instance to the trial court. *See, e.g., Taft Broadcasting Co. v. United States,* 929 F.2d 240, 243–44 (6th Cir.1991); *Estate of Quirk v. Commissioner,* 928 F.2d 751, 757–59 (6th Cir.1991); *Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162, 164–65 (6th Cir.1985). *See also Walters v. First Tennessee Bank, N.A.,* 855 F.2d 267, 271 (6th Cir.1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 812 (1989) (court declining to resolve issue concerning tolling of limitations period that was first raised on appeal by plaintiff). However, as we have noted earlier, "many decisions in this circuit have expressed a willingness and found reason

---

**2.** For cases construing the effect of worksharing agreements on Title VII's filing periods, see *Worthington v. Union Pacific R.R.,* 948 F.2d 477 (8th Cir.1991); *Marlowe v. Bottarelli,* 938 F.2d 807 (7th Cir.1991); *Sofferin v. American Airlines, Inc.,* 923 F.2d 552 (7th Cir.1991); *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874 (3rd Cir.1990); *EEOC v. Techalloy Maryland, Inc.,* 894 F.2d 676 (4th Cir.1990); *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472 (9th Cir.1989); and *Griffin v. Air Prods. & Chems., Inc.,* 883 F.2d 940 (11th Cir. 1989). While these cases hold that "automatic" or "self-executing" filings had occurred under

the terms of various agreements between the EEOC and state human rights agencies, all of these cases are factually distinguishable from this case on at least one critical point. In none of these cases did a state agency apparently violate the terms of the predicate worksharing agreement, by erroneously indicating that it would initially process a charge that should have been processed by the EEOC. This court has only tangentially considered a similar issue, in a brief unpublished opinion that has no precedential power. *Horne v. Allen Metro. Hous. Auth.,* 869 F.2d 1490 (6th Cir.1989) (per curiam).

to take up issues raised for the first time during the process of appeal." *Taft Broadcasting*, 929 F.2d at 244. The court's decision to address issues first raised on appeal stems from the historical powers of equity vested in courts "to prevent manifest injustice and to promote procedural efficiency." *See generally Taft Broadcasting*, 929 F.2d at 244, *citing United States v. Baker*, 807 F.2d 1315, 1321 (6th Cir.1986). Thus, a federal appellate court is always empowered to resolve any issue not considered below "where the proper resolution is beyond any doubt or where injustice ... might otherwise result." *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 477 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990), *citing Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 397 (6th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990). This power to consider an issue *sua sponte* is closely akin to the court's discretionary power to consider clear errors in a lower court's proceedings where the errors or omissions are obvious, unfair or undermine the integrity or public confidence of judicial proceedings. *See generally Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 920–21 (6th Cir.1991), and cases cited therein.

Both bases for our limited exception to the general rule are present. The bureaucratic confusion and error, and the resulting administrative tardiness in fulfilling the statutory 300–day filing requirement, were in no way attributable to any conduct on the part of the plaintiff. Section 706(e) provides for a federal filing more than 180 days after the date of discrimination, if the charge is filed with the state agency "within three hundred days after the alleged unlawful employment practice occurred...." 42 U.S.C.A. § 2000e–5(e) (West 1981).

The defendant contends that under the rule of *Mohasco Corp. v. Silver*, 447 U.S. 807, 817, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980), the plaintiff has nonetheless failed to bring his charge within the 300–day period, regardless of the agencies' actions or inactions. In *Mohasco*, the Su-

preme Court reasoned that § 706(c)'s prohibition on filing with the EEOC until sixty days after proceedings have been commenced under state law, "unless such proceedings have been earlier terminated," meant that the plaintiff's filing was untimely. *See* 42 U.S.C.A. § 2000e–5(c) (West 1991). The Court reasoned that the EEOC itself began state proceedings by forwarding the plaintiff's letter to the state agency. *Id.* at 816, 100 S.Ct. at 2492. In doing so, however, the earliest date upon which the EEOC could act, by § 706(c)'s dictates, was the 351st day—*i.e.*, exactly sixty days after it forwarded the letter to the state agency—so that the charge was not timely. Summary judgment to the defendant on this issue was therefore considered appropriate. *Id.* at 816–17, 100 S.Ct. at 2492–93.

While reaffirming *Mohasco* as a general rule, the Supreme Court has more recently examined the timeliness of charge filings under worksharing agreements in *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). Considering a worksharing agreement similar to the one in this case, the Supreme Court held that a state agency's decision to waive § 706(c)'s sixty-day period "terminates" its proceedings, so that the EEOC may immediately deem the charge to have been timely filed. *Id.* at 115, 108 S.Ct. at 1671. The Court also recognized that such an interpretation would better comport with Title VII's purposes: "to [provide] States with an opportunity to forestall federal intervention" and "[to] promote 'time economy and the expeditious handling of cases'," by not requiring the EEOC to put its own actions into "pointless" abeyance for sixty days. *Id.* at 118, 108 S.Ct. at 1672, *citing* 110 Cong.Rec. 9790 (1964) (Sen. Dirksen's remarks).

■ We agree with the District Court that the logic of *Commercial Products*, not *Mohasco*, controls this case. By filing his charge with the THRC—which, under the worksharing agreement, acted as agent for the EEOC, and *vice versa*—Brown simultaneously filed his charge with the EEOC. To reason that Brown had not met the sixty-day period of § 706(c) would be

irreconcilable with Title VII's purposes because such a result "would result in extraordinary inefficiency without furthering any other goal of the Act." *Commercial Office Products*, 486 U.S. at 119, 108 S.Ct. at 1673. Furthermore, the act or omission that occurred here—*i.e.*, the THRC's mistaken statement of intent to process the charge initially, which passed unnoticed and unchallenged by the EEOC—was an occurrence unknown to the plaintiff, for which he was not responsible. The EEOC has fully acknowledged this to be the case. Rejection of the plaintiff's claim as being untimely under these circumstances would tend to thwart procedural efficiency, by "[frustrating] the congressional intent to ensure state and local agencies the opportunity to employ their expertise to resolve discrimination complaints." *Id.* at 120, 108 S.Ct. at 1673–74. Under the circumstances, to reject the plaintiff's claim due to the bureaucratic confusion between the two agencies would be manifestly unjust.

### III.

■ The Supreme Court squarely held in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) that "compliance with the filing period [is] not a jurisdictional prerequisite to filing a Title VII suit, but [is] a requirement subject to waiver as well as tolling when equity so requires...." The Court reasoned that by construing Title VII's time periods to be analogous to statutes of limitations, "we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* The Supreme Court has reaffirmed the continued validity of *Zipes'* reasoning in several recent cases. *See, e.g., Irwin v. Veterans Administration*, — U.S. —, 111 S.Ct. 453, 457 & n. 2, 112 L.Ed.2d 435 (1990) (recognizing that "[t]ime requirements in law suits between private litigants are customarily subject to 'equitable tolling' "); *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989).

The Supreme Court's holding in *Zipes* was fully in accord with this Court's own jurisprudence. As we noted in 1981: "The informal and flexible nature of [the EEOC's] administrative process suggests that we should not apply the time requirements inflexibly and mechanically...." *Morgan v. Washington Manufacturing Co.*, 660 F.2d 710, 711 (6th Cir.1981). In full agreement with the Supreme Court's later reasoning in *Zipes*, the Sixth Circuit held that Title VII's various filing requirements were no longer considered to be a jurisdictional requirement. *See Wright v. State of Tennessee*, 628 F.2d 949, 953 (6th Cir.1980) (en banc) (time of filing notice of claim under ADEA held not to be a jurisdictional prerequisite); *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979) ("Title VII time limitations are jurisdictional in the sense that that phrase is used in relation to statutes of limitations and equitable principles should apply in circumstances which warrant their application.").

We held in *Morgan v. Washington Manufacturing Co.* that in the absence of prejudice to a defendant, or a showing of bad faith or lack of diligence by a claimant, considerations of equity favored tolling Title VII's filing periods when the claimant makes a timely filing with the EEOC or a federal agency with jurisdiction in "some fields of employment discrimination." *Morgan*, 660 F.2d at 712. In *Morgan*, as here, the EEOC appeared as amicus curiae and during oral argument advocated that we adopt equitable tolling under these circumstances. We agree with the EEOC, and believe that under *Morgan*, principles of fairness and consistency suggest that we toll the statutory filing requirements as applied to this plaintiff. *See also Farrell v. Automobile Club of Michigan*, 870 F.2d 1129, 1134 (6th Cir.1989) (tolling was authorized for plaintiff who had been otherwise diligent and when defendant received adequate notice of plaintiff's claim in case under ERISA), and *Leake*, 605 F.2d at 259.

The plaintiff, while outside the general 180–day rule of § 706(e), still complied with the alternative 300–day period. But for the THRC's erroneous annotation, timely initial

processing would have taken place under the terms of the worksharing agreement by the EEOC, and not by the THRC. Counsel for the amicus EEOC conceded as much during oral arguments. The state agency would therefore have terminated its proceedings within 300 days, and the charge would have been timely. There is also no evidence, nor was it argued by the defendant, that defendant failed to receive adequate notice under these circumstances to the detriment of its rights. Thus, under these facts we are presented with a situation ripe for equitable tolling under the teachings of *Zipes* and this court's decisions in *Morgan* and *Leake. Cf. Brown v. Mead Corp.*, 646 F.2d 1163, 1167 (6th Cir. 1981) (appellant failed to bring herself within equities that would otherwise make tolling appropriate).

The Supreme Court's refusal to apply equitable tolling to another Title VII claimant in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) is readily distinguishable from the plaintiff's case here. In *Baldwin County*, apart from the plaintiff's own bare assertion of her "diligent efforts" despite her failure to file suit within ninety days of receipt of a right-to-sue notice, the Court concluded that the sparseness of the record provided no sense of the equities to be balanced in determining the appropriateness of tolling. *Id.* at 150–51, 104 S.Ct. at 1725–26. Nor do we find the defendant's citations to decisions from other circuits to be controlling on these facts. *Cf. Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753–55 (3rd Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983) (rejecting plaintiff's claim that conduct on part of EEOC "misled" her into filing late), and *Citicorp Person–to–Person Financial Corp. v. Brazell*, 658 F.2d 232, 234–35 (4th Cir.1981) (finding no basis for equitable tolling where legal mistake, if any, was solely plaintiff's and was not induced by either EEOC or defendant employer).

The apparent "legal mistake" here was manifestly not of the plaintiff's doing, nor was it within his knowledge or within his control to rectify. To deny relief to the plaintiff under the peculiar facts of this case "would be to exalt form over substance and preclude relief to a potentially meritorious claim simply because it was the victim of a bureaucratic mix-up," as well as to defeat two of the goals sought by the THRC and the EEOC: the minimization of red tape and the efficient processing of discrimination charges. *See, e.g., EEOC v. Techalloy Maryland*, 894 F.2d 676, 679 (4th Cir.1990) (interpreting similar worksharing agreement). The errors of the administrative agencies should not be visited upon the plaintiff, where he did all that he could have reasonably done to file a charge of discrimination in an otherwise timely manner. *See, e.g., Ferguson v. Kroger Co.*, 545 F.2d 1034, 1035 (6th Cir.1976) (administrative delay of EEOC in not following its own established procedures held not to defeat claimant's right to litigate discrimination claim). We hold that the equitable doctrine of tolling applies under these circumstances.

## IV.

Accordingly, the judgment of the District Court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.