**Shirley STOLL, Plaintiff–Appellant,**

v.

**The WESTERN & SOUTHERN LIFE
INSURANCE COMPANY,
Defendant–Appellee.**

**No. 01–3401.**

United States Court of Appeals,
Sixth Circuit.

May 22, 2003.

Before RYAN, BATCHELDER, and
LAY,* Circuit Judges.

---

\* The Honorable Donald P. Lay, United States
Circuit Judge for the Eighth Circuit, sitting by designation.

RYAN, Circuit Judge.

Shirley Stoll appeals from the district court's order granting judgment to her former employer, Western & Southern Life Insurance Company, on her claim for additional pension benefits, pursuant to various provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. FACTUAL BACKGROUND

### A. Employment and Pension Plan Provisions

#### 1. First Period of Employment— 1954 to 1969

In June 1954, Stoll began working at Western–Southern, where she participated in the company's pension plan. In 1968, Stoll became pregnant, and in February 1969, Western–Southern terminated her employment pursuant to its policy of not employing pregnant women past the twentieth week of pregnancy.

Stoll was 33 years old at the time, and she had worked at Western–Southern for approximately 14 years and 8 months. According to the terms of the pension plan in effect in February 1969 (1968 Plan), a terminated employee who was at least *35 years old* and had at least ten years' experience prior to termination would receive a "paid-up deferred annuity policy" beginning on the employee's eventual retirement date:

> If a member's services are terminated . . . after completing ten years of active service and on or after his *35th birthday,* Western–Southern will issue the member a paid-up deferred annuity policy providing for the payment of a Deferred Annuity on the member's Normal Retirement Date. . . .

(Emphasis added.) Stoll did not qualify for this annuity because she was only 33 years old when her services were terminated.

The 1968 Plan also states that the calculation of a member's monthly benefit amount "is based on the member's age at retirement, his period of *active service* and his average monthly earnings. . . ." (Emphasis added.) The 1968 Plan defines "active service" as *"continuous service* exclusive of any periods during which the member is entitled to Permanent Disability Benefits." (Emphasis added.) "Continuous service," in turn, is defined as "the last period of *uninterrupted employment* with Western–Southern . . . commencing with the date of such employment and ending with the date of termination of employment stated in terms of years and days." (Emphasis added.)

#### 2. Second Period of Employment – 1981 to 1996

In October 1981, Western–Southern re-hired Stoll. Eight years later, in October 1989, Stoll sent a letter to William Williams, the CEO of Western–Southern, requesting that the company "add [her] original 14 years and 8 months experience to [her] current years of experience for pension purposes." In the letter, Stoll acknowledged that no pension benefits had vested as of 1969 because she was then only 33, and that the company would have to make an "exception" in order to grant her request. Williams replied by letter and explained that Western–Southern could not give her credit for her prior experience pursuant to its "past and current policies." Williams did not explain the reasons for denying Stoll's request, did not reference any specific plan provisions, and did not provide Stoll with information about seeking further review of her claim.

Stoll did not pursue the matter further until after she retired in 1996.

### 3. Retirement—1996

Stoll retired from Western–Southern in December 1996, at which time the 1994 Restatement of the pension plan (1994 Plan) governed. Sometime during Stoll's second period of employment, Western–Southern had modified the terms of the Plan by adding a "break in service" provision dealing specifically with employees who returned to the company after some period of interruption. The break in service provision, contained in Section 6.7 of the 1994 Plan, states the circumstances in which a returning employee's prior service time will count toward his or her future benefits calculation:

> *Reemployment of Former and Retired Members*—If a former Member or retired Member is reemployed, he shall be treated as set forth in the following subsections:
>
> (a) If the Member did not satisfy any of the reemployment requirements in Section 4.7, upon reemployment he shall be treated as a new Employee for purposes of Article III. If the Member has met the reemployment requirements in Section 4.7(a) or (b), any Service such Member may have had before his most recent Termination Date shall be reinstated. However, years of Service completed before January 1, 1976 will not be added to years of Service completed after any Break in Service. If Service is reinstated, then any Years of Membership accumulated during the period of such Service shall also be reinstated.

As referenced, Section 4.7 states the qualifications for reemployment:

> *Reemployment*—Any former Employee who has ceased to be an Employee shall be considered reemployed (rather than a new Employee for purposes of this Plan) if such individual resumed Employment:
>
> (a) before incurring a Break in Service, or
>
> (b) after a Break in Service but before his number of consecutive Breaks in Service equaled or exceeded the greater of (i) his number of years of Service completed after January 1, 1976 as determined under Section 4.2 hereof or (ii) five consecutive Breaks in Service and such individual completes a year of Service after such break, or
>
> (c) when he already had a vested and nonforfeitable interest in some or all of his Accrued Benefit.

The parties dispute whether Stoll qualified for reemployment, but, as we shall explain, this factual despite does not affect our decision.

Section 11.4 of the 1994 Plan defines the Security Plan Committee's role in administering and interpreting the Plan:

> The Security Plan Committee shall have such powers as may be necessary to discharge its duties under the Plan, including but not limited to the power:
>
> (a) to interpret and construe the Plan, to determine all questions with regard to Employment, eligibility, Service, membership, Compensation, Retirement Income, and such factual matters as date of birth and marital status, and similarly related matters for the purpose of the Plan, and the Committee's determination of all questions arising under the Plan shall be conclusive upon all Members, the Company and other interested parties.

In August 1997, Stoll's original attorney sent Western–Southern a "request for redetermination of pension benefits" on behalf of Stoll. Western–Southern treated this letter as an appeal of a determination of pension benefits. The company denied

the appeal in October 1997 in a letter which stated:

> The Security Plan Appeals Committee has reviewed the facts surrounding your case and the provisions of our pension plan. It is apparent that you were employed with Western–Southern Life between 1954 and 1969. You terminated your employment in 1969 and returned to the organization in 1981. You retired on December 14, 1996. At that point in time, you were credited with 15 years of service, which is consistent with the provisions of our pension plan. It is important to note that the manner in which your retirement benefit was handled does comply with all ERISA legislation governing pension plans. Because your years of service were credited appropriately according to the provisions of our plan, we are not able to honor your request for additional credited service at this time.

In May 1998, Stoll retained a new attorney who sent a letter to Western–Southern seeking copies of the administrative record and all the Plan documents, including Summary Plan Descriptions (SPD), for the years 1954 through 1998. In response, Western–Southern provided all of the requested documents except the 1992 SPD, which was the SPD in effect at Stoll's retirement in 1996, although the actual governing plan was the 1994 Plan. According to Western–Southern, it inadvertently omitted the 1992 SPD. The company also claims that it provided the 1992 SPD to Stoll during her employment. Stoll did receive the 1992 SPD during discovery.

## B. District Court Proceedings

Stoll filed suit against Western–Southern in the Southern District of Ohio on November 18, 1998. Her amended complaint asserted four claims: (1) the denial of her benefit claim violated ERISA because the Plan in effect in 1969 did not permit or disclose the forfeiture of Stoll's accumulated service time upon termination; (2) Western–Southern breached its fiduciary duty under ERISA by denying her claim; (3) Western–Southern violated ERISA by failing to provide Stoll with certain plan documents prior to her 1969 termination and her 1996 retirement; (4) Western–Southern violated ERISA by failing to provide Stoll with a proper notice of denial of benefits.

After reviewing the administrative record pursuant to *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir.1998), the district court entered judgment in favor of Western–Southern on Stoll's first three claims. Eleven months later, Stoll filed a motion for reconsideration of the court's decision on one of the dismissal claims, count two, which alleged breach of fiduciary duty. Stoll claimed that new authority from the Third Circuit demonstrated the error in the district court's earlier decision. Based on this Third Circuit authority, Stoll suggested that the break in service provision in the 1994 Plan violated ERISA, and that Western–Southern's implementation of an illegal plan term constituted a breach of fiduciary duty. The district court denied Stoll's motion for reconsideration because she had not explained her delay or demonstrated the relevance of the cited authorities to her original claim.

Stoll's fourth claim, a procedural challenge to the denial of benefits, remained pending. Ultimately, the district court granted summary judgment to Western–Southern on the theory that the company had acted in "substantial compliance" with ERISA's procedural requirements in handling Stoll's claim and appeal.

## C. Subjects of Stoll's Appeal

Stoll's arguments on appeal differ significantly from the arguments she presented

to the district court. Western–Southern, for its part, has given us little assistance in deciphering Stoll's claims. Nevertheless, we have identified three issues in this appeal: (1) whether procedural irregularities in Western–Southern's handling of Stoll's claim entitle her to *de novo* review of the substantive benefits decision; (2) whether Western–Southern, through the plan administrator, acted arbitrarily and capriciously in interpreting the terms of the 1968 Plan and denying Stoll's claim for benefits; (3) whether Western–Southern breached its fiduciary duty by enforcing plan terms that violate ERISA and the Internal Revenue Code.

## II. ANALYSIS

We review de novo "the district court's determination regarding the proper standard to apply in its review" of Western–Southern's decision. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996). We also review *de novo* the district court's decision to uphold Western–Southern's denial of benefits. *Id.* at 381. We review the district court's findings of fact, however, for clear error. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 594–95 (6th Cir.2001).

### A. Standard of Review Applicable to Administrator's Decision

■ Stoll contends that Western–Southern failed to comply with ERISA's procedural requirements when its CEO, William Williams, denied Stoll's claim for additional service credit in 1989 and when its Security Plan Committee decided Stoll's 1997 appeal. According to Stoll, these procedural violations require the court to review the benefits decision *de novo*. Western–Southern responds that it complied with ERISA in all respects, but that the arbitrary and capricious standard of review governs in any event, since the plan grants the administrator discretionary authority to determine benefits eligibility.

In reviewing the decisions of plan administrators, a *de novo* standard applies "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If such discretion exists, the arbitrary and capricious standard of review applies. *Sanford*, 262 F.3d at 595. In *Sanford*, however, we recognized that the *de novo* standard of review applies when an unauthorized body makes the decision denying the benefits claim, regardless of the degree of discretionary authority provided in the plan. 262 F.3d at 597. In that case, the district court had made the factual finding that the defendant violated plan procedures by allowing an unauthorized body, a union grievance committee, to make the benefits decision. *Id.* at 596–97. We upheld this factual determination as not clearly erroneous and then upheld the district court's legal conclusion that benefits decisions by unauthorized bodies receive no deference. *Id.*

Before our decision in *Sanford*, the Eighth Circuit, in *Buttram v. Central States, S.E. and S.W. Areas Health and Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996), suggested that a benefits decision might not receive the customary deference if it involved procedural deficiencies that reflected a serious breach of the administrator's duty. In *Buttram*, however, even though the administrator had failed to provide the required notice and a required second-level appeal, the court still applied a deferential standard of review, since the deficiencies did not "demonstrate that the actual decision was reached without reflection and judgment." *Id.* at 901.

ERISA establishes several requirements for the handling of benefits claims. According to 29 U.S.C. § 1133, every plan must:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Accompanying regulations elaborate on the contents of the notice:

The notification shall set forth, in a manner calculated to be understood by the claimant—

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

29 C.F.R. § 2560.503–1(g).

When evaluating benefits decisions for procedural errors, we utilize a "substantial compliance" standard, which means that we will not disturb a benefits decision based on a procedural defect when the underlying purposes of 29 U.S.C. § 1133, to ensure notice and an opportunity for review, are fulfilled. *See Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807–08 (6th Cir.1996).

Stoll concedes that the Plan vests the Security Plan Committee with broad discretionary authority regarding the administration and interpretation of the plan. Therefore, pursuant to *Firestone Tire & Rubber Co.* and *Sanford*, an arbitrary and capricious standard of review applies unless a sufficient reason exists to apply heightened scrutiny. Stoll suggests three reasons for departing from the deferential standard: (1) an improper decision-maker; (2) Western–Southern's failure to disclose the 1992 SPD; and (3) the deficient notice of denial.

■ Stoll's first two arguments are completely unavailing. First, Stoll did not present the district court with the argument that William Williams was an unauthorized decision-maker. We generally do not entertain issues raised for the first time on appeal, although we have discretion to do so in order to prevent manifest injustice, promote procedural efficiency, or resolve obvious errors. *Brown v. Crowe*, 963 F.2d 895, 897–98 (6th Cir.1992); *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 427 (6th Cir.2002). No basis for exercising such discretion exists here, since despite Williams' 1989 decision, the Security Plan Committee ultimately did review and reject Stoll's claim in 1997. Stoll's second argument—that Western–Southern failed to disclose the 1992 SPD—is likewise meritless. At most, Stoll claims that Western–Southern's failure to provide the 1992 SPD prior to discovery prevented her from making "a determination with regard to the benefits available to her prior to filing suit." Because she does not suggest that this omission affected the plan administrator's decision-making process, it cannot affect the standard of review.

Stoll's third argument has factual merit, but we reject her legal conclusion. Stoll correctly points out that both the 1989 letter from Williams and the 1997 letter from the plan administrator failed to state the specific plan provisions underlying the claim denial, as required by 29 C.F.R. § 2560.503–1(g)(ii). Despite the district court's conclusion to the contrary, we agree with Stoll that Western–Southern did not substantially comply with ERISA's notice requirements. The first notice stated vaguely that "past and current policies" precluded Stoll's claim; the second notice explained that the denial was "consistent with the provisions of our pension plan" and that "[Stoll's] years of service were credited appropriately according to the provisions of our plan." These statements could not have informed Stoll of the basis for the decision. Nevertheless, the deficient notices do not demonstrate that the administrator failed to exercise the discretion granted by the plan. Thus, even if we were inclined to adopt the theory suggested by the Eighth Circuit in *Buttram*, Stoll would not be entitled to heightened scrutiny of the benefits decision. Therefore, the arbitrary and capricious standard of review applies.

### B. Denial of Benefits in Contravention of the Plan

■ Stoll argues that the terms of the 1968 Plan do not permit the plan administrator to deny her claim for benefits. She concedes that the 1968 Plan contained the age/service provision under which she failed to qualify for vested benefits at termination, but she contends that this provision says nothing about the forfeiture of accrued service time for those who leave before qualifying but later return. Stoll urges the court to construe this "ambiguity" in her favor. Western–Southern responds that the district court correctly

evaluated Stoll's claim based on the terms of the 1994 Plan, but adds that, under either version of the plan, the benefits decision was not arbitrary and capricious.

We have explained that "[a] decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan.... In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933–34 (6th Cir.2000) (internal citations omitted). Here, although there is some confusion about which plan governs, we need not choose between them, because the decision to deny Stoll's claim proceeds from a reasonable interpretation of the terms of either plan.

The terms of the 1994 Plan explicitly preclude Stoll's claim. Section 6.7 of the 1994 Plan provides that an employee who qualifies for "reemployment" can be reinstated; however, even for reinstated employees, "years of Service completed before January 1, 1976 will not be added to years of Service completed after any Break in Service." Although the parties disagree whether Stoll qualified for "reemployment," it is undisputed that all of her prior service occurred before January 1, 1976. Thus, even if Stoll were "reemployed" and "reinstated," she is not entitled to credit for her prior service under the express terms of the 1994 Plan.

The 1968 Plan is not as clear, but its provisions support the interpretation adopted by the plan administrator. First, a member is not eligible for any benefits under the 1968 Plan unless he or she satisfies the age/service requirement. Because Stoll did not satisfy this requirement, she was not eligible for benefits at

the time of her termination in 1969. Although this provision does not speak directly to the issue at hand, it lends support to the administrator's interpretation. Second, according to the 1968 Plan, the benefit amount "is based on the member's age at retirement, his period of active service and his average monthly earnings...." The 1968 Plan defines "active service" as "continuous service exclusive of any periods during which the member is entitled to Permanent Disability Benefits." "Continuous service" is defined as "the last period of uninterrupted employment with Western–Southern ..., commencing with the date of such employment and ending with the date of termination of employment stated in terms of years and days." Together, these three definitions indicate that a person in Stoll's position in 1968, seeking credit for prior service, would not have received the benefit of that prior period in the calculation of the monthly payment amount, since only the "last period of uninterrupted employment" counted. These plan terms, while less than crystal clear, provide the administrator with a solid basis for interpreting the 1968 Plan to prohibit the credit Stoll seeks. We therefore conclude that the benefits decision was not arbitrary and capricious in relation to the terms of either the 1968 or the 1994 Plan.

## C. Breach of Fiduciary Duty By Enforcing Unlawful Plan Terms

Finally, Stoll claims that Western–Southern breached its fiduciary duty by enforcing unlawful plan terms. Specifically, Stoll contends that the 1994 Plan's break in service provision violates 29 U.S.C. § 1053(b)(1), I.R.C. § 411(a)(3)(C), and I.R.C. § 411(a)(4), all of which concern minimum vesting standards, and 29 U.S.C. § 1052(b)(5)(A), which requires Plans to count pregnancy-related absence as up to 501 hours of service. According to Stoll, by enforcing these plan terms despite their unlawfulness, Western–Southern breached its fiduciary duty. We decline to address this contorted claim because Stoll failed to present it properly to the district court.

The "breach of fiduciary duty" argument Stoll makes on appeal shares a label, but nothing else, with the argument ruled on by the district court. In her amended complaint, Stoll asserted that Western–Southern "breached its fiduciary duty ... by failing to administer the Plan solely in the interest of the participants and beneficiaries as required under 29 U.S.C. § 1104(a)(1) and by denying the benefits to the Plaintiff contrary to the law." In Stoll's motion for judgment, she elaborated on this claim by contending that Western–Southern breached its fiduciary duty by denying benefits in contravention of the plain language of the plan itself. The district court entered judgment against Stoll on this claim in September 1999.

About 11 months later, in August 2000, Stoll filed a motion for reconsideration, in which she attempted to reconfigure her claim. Instead of arguing that Western–Southern breached its fiduciary duty by *failing to enforce* the 1994 Plan, Stoll suggested, in the vaguest possible fashion, that the company breached its duty by *enforcing* the 1994 Plan, since the terms of the 1994 Plan violated ERISA. The district court declined to address her argument and denied the motion for reconsideration because it was untimely and because it failed to demonstrate how intervening authority from the Third Circuit was relevant to Stoll's original claim.

We generally do not entertain issues which were not presented properly to the district court, although we have discretion to do so in order to prevent manifest injustice, promote procedural efficiency, or resolve obvious errors. *See Olympic Arms*

*v. Buckles,* 301 F.3d 384, 387–88 (6th Cir. 2002); *Brown,* 963 F.2d at 897–98. Stoll did not raise this issue properly below; she waited until 11 months after the district court's decision to present a bare outline of her novel argument in a motion for reconsideration. Stoll does not point to an obvious error by the district court, and a decision on the merits is not necessary to prevent a plain miscarriage of justice or to promote procedural efficiency. We therefore decline to address Stoll's claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.