**KENTUCKY RESOURCES COUNCIL, INC., Plaintiffs,**

**v.**

**Bruce BABBITT, Secretary, United States Department of the Interior, Defendant.**

**No. CIV. A. 97–9.**

United States District Court, E.D. Kentucky.

Feb. 20, 1998.

Thomas FitzGerald, Frankfort, KY, Walton D. Morris, Jr., Charlottesville, VA, L. Thomas Galloway, Galloway & Associates, Boulder, CO, for Plaintiff.

Jane E. Graham, Frances Catron, U.S. Atty's Office of Field Solicitor, U.S. Dept. of Interior, Knoxville, TN, for defendant.

## MEMORANDUM OPINION
## AND ORDER

WEHRMAN, United States Magistrate Judge.

Kentucky Resources Council, Inc., Kentuckians for the Commonwealth and the National Wildlife Federation (plaintiffs) have filed a motion for summary judgment to set aside the decision of Bruce Babbitt, Secretary of the Interior, denying the plaintiffs' petition for attorney fees. Defendants have filed a cross-motion for summary judgment. By

consent of the parties, this case has been referred to the magistrate judge for final disposition pursuant to 28 U.S.C. § 636(c)(1).

Based upon the record presented, the court concludes that the Secretary's decision to deny the petition for fees was erroneous. Therefore, the court will remand the petition to the Secretary for further review and determination of the appropriate fee award.

## I. FINDINGS OF FACT

Plaintiffs filed two citizens complaints with the Office of Surface Mining Reclamation and Enforcement ("OSM"), on August 19, 1992, requesting that OSM take enforcement action against the Branham & Baker Coal Company ("Branham & Baker") based upon that company's alleged failure to identify its control of a mine at which there were outstanding violations of Kentucky's mining and reclamation regulations. Asserting that Kentucky had inappropriately issued permits to Branham & Baker despite outstanding violations, the plaintiffs specifically requested the following relief: 1) rescinding of the permits; 2) initiation of enforcement proceedings; 3) reclamation of the sites; 4) abatement agreements; and 5) penalties. The OSM office did not immediately respond to the complaints.

On October 9, 1992, the Lexington Field Office ("LFO") of the OSM issued a ten-day notice ("TDN") to Kentucky state regulators asserting that it had reason to believe that the State had improvidently issued permits to Branham & Baker. However, the LFO subsequently granted Kentucky four extensions of time in which to respond to the notice over the course of seven months.

During this period of time, on January 19, 1993, Kentucky issued its first response to the "ten-day" notice by concluding that Branham & Baker did not, in fact, control the Deep River mine. However, Kentucky was forced to retract that decision for further review after the LFO supplied Kentucky with additional evidence concerning Branham

& Baker's ownership and control of the mine.[1]

On March 15, 1993, plaintiffs requested an informal review of the OSM Lexington Field Office's delay of federal inspection and enforcement action in response to their complaints. A second request for an informal review was filed by plaintiffs on March 26, 1993.

On April 5, 1993, the Acting Director of OSM issued a policy memorandum to OSM personnel on extensions of time ("the First Memorandum"), instructing OSM personnel that their investigations should last no longer than 30 days and extensions of time no more than 15 days. The issuance of the First Memorandum reflects the priority which OSM gave to plaintiffs' concerns regarding the inappropriate delays by the Local Field Office. Not surprisingly, on April 13, 1993 in response to the First Memorandum, the LFO issued its determination that Kentucky had failed to take appropriate action in response to the October TDN "to cause Branham & Baker to be permit blocked or to suspend and/or revoke Branham & Baker's permits." A.R. at 59. Thereafter, on April 29, 1993 the LFO issued an initial notice to Kentucky, advising that OSM had reason to believe that the specified permits had been improvidently issued, renewed or amended.

On April 30, 1993, OSM issued an informal review decision that adopted plaintiffs' position on all issues, except for the violations of plaintiffs' procedural rights. With respect to that issue, the OSM agreed that "excessive amounts of time were allowed to the State to respond to the citizen complaints" and noted the issuance of its First Memorandum on this issue. OSM further reflected its concern about the inordinate delay by the LFO in handling the citizens' complaints by instructing the LFO to "conduct an **immediate** inspection of the permit records of the State regarding Branham and Baker, and its ownership and control information, and to inform [plaintiffs] of its findings no later than May 21, 1993." A.R. at 37 (emphasis added). In

---

1. It is puzzling why the OSM would have to educate Kentucky officials on a matter as basic as Branham and Baker's affiliation/ownership of Deep River. Nevertheless, Kentucky requested another extension to verify the contents of its own records, a questionable delay by any standard.

the informal decision, OSM also stated that it was "considering the need for additional guidance to Field Offices to deal with time frames and the interacting between the improvidently issued permit provisions and the TDN [ten-day notice] provisions." A.R. at 38.

The OSM decision also required the Lexington Field Office to issue a separate ten-day notice to Kentucky for the Branham & Baker permit disclosure violations, which the LFO did the same day. On May 25, 1993, the LFO determined that Kentucky had failed to take appropriate action concerning Branham & Baker's permit disclosure violations.

On May 10, 1993, plaintiffs appealed to the Interior Board of Land Appeals based on OSM's failure to provide sufficient relief on the plaintiffs' procedural complaints. In the letter noting the appeal, plaintiffs indicated that they considered the OSM's promise to consider "the need for additional guidance" on the procedural issues to be inadequate.

On May 28, 1993, Kentucky and Branham & Baker executed a settlement agreement which addressed and resolved all substantive issues raised by the plaintiffs in their citizen complaints. Neither OSM nor the plaintiffs were parties to that agreement.

On July 27, 1993, while plaintiffs' appeal was pending with the Board, OSM issued a second memorandum (the Second Memorandum) establishing new procedures to ensure the agency's timely and effective response to citizen's complaints. Since the Second Memorandum addressed and granted the relief requested by the plaintiffs in their appeal of the procedural issues, plaintiffs voluntarily moved to dismiss the appeal. The appeal was dismissed on November 16, 1993.

On December 14, 1993, plaintiffs filed a petition for award of fees and expenses for work performed in the filing and prosecution of their citizens complaint. On January 17, 1997, an administrative judge issued a decision denying the award, based on a finding that OSM had essentially granted plaintiffs' requested relief prior to plaintiffs' appeal to the Board. The administrative judge ruled that attorney fee awards under § 525(e) are

limited to situations where the citizen contributes to a full and fair determination of the issues in a formal proceeding before the Board.

## II. CONCLUSIONS OF LAW

■ The Secretary of the Interior was mandated by Congress to establish rules and regulations to carry out the Surface Mining Control and Reclamation Act of 1977. SMCRA § 201(c)(2), 30 U.S.C. § 1211(c)(2). In interpreting these statutes and regulations, a reviewing court is to give deference to the agency's interpretation. *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court cannot substitute its judgment for the agency if a rational basis exists for the agency's decision. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.), *cert. denied* 426 U.S. 941, 96 S.Ct. 2663, 426 U.S. 941 (1976) (citations omitted). The relevant statute and regulations at issue in this case are Section 525(e) of the SMCRA, 30 U.S.C. § 1275(e) and 43 C.F.R. § 4.1290 and § 4.1294.

■ Section 525(e) provides as follows:

Whenever an order is issued under this section, or as a result of any administrative proceeding under this Act, at the request of any person, a sum equal to the aggregate amount of all costs and expenses (including attorney fees) as determined by the Secretary to have been reasonably incurred by such person for or in connection with his participation in such proceedings, including any judicial review of agency actions, may be assessed against either party as the court, resulting from judicial review or the Secretary resulting from administrative proceedings, deems proper.

30 U.S.C. § 1275(e). Section 525(e) is implemented by the regulations codified at 43 C.F.R. § 4.1290 and § 4.2194 which provide:

§ 4.1290 Who may file.

(a) Any person may file a petition for award of costs and expenses including attorneys' fees reasonably incurred as a result of that person's participation in any administrative proceeding under the Act which results in

(1) A final order being issued by an administrative law judge; or

(2) A final order being issued by the Board.

§ 4.1294 Who may receive an award.

Appropriate costs and expenses including attorneys' fees may be awarded—

(b) From OSM to any person, other than a permittee or his representative, who initiates or participates in any proceeding under the Act, and who prevails in whole or in part, achieving at least some degree of success on the merits, upon a finding that such person made a substantial contribution to a full and fair determination of the issues.

Under the Secretary's regulations, only where there is a final order from the Interior Board of Land Appeals (hereinafter "Board") or an administrative law judge may fees be awarded in an administrative proceeding. 43 C.F.R. § 4.1290. In addition, the person seeking an award of fees must have participated in an administrative proceeding which resulted in the order. Essentially, then, there are three prerequisites for an award of fees: 1) a final order by an appropriate body or judge; and 2) participation in an "administrative proceeding" which 3) resulted in relief.

■■■■ The administrative judge concluded that the first prerequisite for the recovery of fees under the regulations—a final order from an administrative law judge or the Board—had been met, a conclusion with which this court agrees. It is important to recognize that the ten-day notices and other actions taken by the LFO/OSM or Kentucky do not satisfy the regulatory prerequisite. However, the final order of the Board dismissing the plaintiffs' appeal does constitute a "final order" even though it does not address the merits of the appeal. 137 IBLA at 350–51.

While there is relatively little dispute over whether plaintiffs have satisfied the first prerequisite for the award of fees, there is great dispute over whether they have satisfied the second and third prerequisites. Regarding the second prerequisite, the administrative judge implicitly found that plaintiffs had participated in an "administrative proceeding,"

but limited the phrase "administrative proceeding" to plaintiffs' appeal to the Board. Thus, the administrative judge focused on plaintiffs' participation in their formal appeal proceeding, rather than any of the earlier informal proceedings before OSM which were initiated by plaintiffs' citizen complaints.

The administrative judge rejected plaintiffs' application for fees because he determined that plaintiffs had not satisfied the third prerequisite for the award of fees, which he defined as a "causal nexus between its actions in prosecuting an appeal to the Board and the corrective actions taken by OSM" in response to the complaints. The administrative judge found that because OSM issued the April 30, 1993 memorandum substantially granting plaintiffs relief prior to the date of plaintiffs' appeal, and because of evidence that OSM would have granted plaintiffs procedural relief without an appeal, plaintiffs failed to show that their participation in the appeal was necessary to obtain the requested relief.

## A. The Meaning of "Administrative Proceeding"

■■■ Plaintiffs acknowledge that § 525(e) requires fee applicants to show the issuance of an order which results from participation in an "administrative proceeding" under the Act. However, plaintiffs argue that the Board's decision inappropriately limits "any administrative proceeding" to an appeal before the Board. Plaintiffs argue that their earlier participation in "informal" administrative proceedings—including the very filing of their citizens complaints—should be deemed to be participation in a qualifying administrative proceeding under the Act.

If plaintiffs' interpretation prevails, it is of no consequence that the relief obtained by plaintiffs preceded their formal appeal to the Board, so long as relief resulted from their complaints. Thus, plaintiffs argue strenuously that the prerequisite for the award of fees in § 525(e) of participation in an "administrative proceeding" should be broadly interpreted to include "informal" administrative

proceedings before OSM which precede a formal appeal to the Board.

This court disagrees. The Board's interpretation of the term "administrative proceeding" in § 525(e) as requiring substantial participation in a formal proceeding before the Board, rather than merely informal proceedings along the way, is reasonably grounded in the language of the Act and its legislative history. If the mere filing of a successful citizens complaint were enough to garner an award of fees, there would be no need for the statute to require the issuance of an "order" which "results" from the administrative proceeding as a precondition to an award of fees. In short, there would be no need for the first and third statutory prerequisites.

Language in § 525(e) which permits the award of fees to "either party" strongly suggests that the administrative proceeding specified must be formal and adversarial in nature, supporting the interpretation that the proceeding must be one before the Board. *See also* S.Rep. No. 128, 95th Cong., 1st Sess. 59 (1977)(legislative history supporting agency interpretation that citizen "cases" must be formal and adversarial to be subject to attorney fee provisions); *Utah Int'l Inc. v. Dep't of the Interior,* 643 F.Supp. 810, 817 (D.Utah 1986) (holding that the fee shifting statute does not apply to non-adversarial administrative proceedings). Thus, the administrative judge correctly determined that only citizen complainants who are forced to file an appeal to the Board to obtain the requested relief are entitled to fees under § 525(e).

It should be obvious from the above discussion that rejecting plaintiffs' more liberal interpretation of the term "administrative proceeding" does not foreclose their petition for relief. The administrative judge did not reject plaintiffs' petition for fees based upon a failure to participate in an "administrative proceeding"—the second prerequisite. Instead, the rejection of plaintiffs' fee petition was based upon a finding that the plaintiffs' participation in the appeal was not causally related to the relief they obtained.

In fact, plaintiffs concede in their reply memorandum that participation in informal administrative proceedings alone is insufficient for the award of fees, and that a formal appeal before the Board is statutorily required. However, they argue that participation in earlier informal proceedings provides a sufficient basis for a fee award when a formal appeal is subsequently filed. In this case, plaintiffs assert that they are entitled to an award of fees for their participation in all informal proceedings leading up to the appeal, even if the greater relief resulted from those proceedings rather than from the appeal, because a statutorily sufficient "administrative proceeding" (appeal) was ultimately filed. With this proposition the court can agree, at least on the facts presented.

Defendant argues that plaintiffs' position could easily result in the filing of pro forma, meaningless appeals before the Board, after relief has been obtained through prior informal proceedings, merely to obtain entitlement to fees. On the other hand, plaintiffs point out that if defendant prevails, the agency could (as it apparently did in this case) string out the informal administrative proceedings for such a long period of time that citizens are effectively precluded from getting to the fee-eligible appeal process, because OSM will have granted substantial relief prior to the appeal.

Neither defendant's nor plaintiffs' concerns are overly worrisome. Citizens may not obtain fees as the result of a "pro forma" appeal, because of the requirement that their appeal bear a "causal nexus" to the relief ultimately obtained. Although the court agrees with plaintiffs that it would be inequitable to permit a claim for fees to be defeated by OSM wrongfully delaying disposition or preventing an appeal from occurring, the broad procedural relief obtained from OSM by plaintiffs in this very case will preclude similar "stalling" tactics in the future. Plaintiffs argue further that, in light of long Board delays,[2] OSM will too often be permitted to defeat an award of fees by granting relief

---

2. Plaintiffs indicate that appeals before the Board typically proceed for three to four years

prior to resolution.

after an appeal has been filed, thereby mooting the appeal and defeating a "causal nexus" claim. Again, plaintiffs' fear is not well-founded. Although granting plaintiffs relief prior to the conclusion of an appeal may permit defendants to argue that the appeal was unnecessary, plaintiffs may as easily argue that the filing of the appeal was essential to pressure the agency into granting relief. Not surprisingly, those are precisely the arguments presented here.

## B. The Essential Link Between the Appeal and the Relief Obtained

■ As previously indicated, the third prerequisite for an award of fees is a showing that the appeal had some bearing on the actions ultimately taken by OSM officials. *Kentucky Resources Council, Inc. v. OSM*, 137 IBLA 345, 348–49 (1997). In other words, there must be a causal nexus between the plaintiffs' actions in prosecuting the appeal to the Board and the corrective actions taken by OSM. *Id.* at 352. The administrative judge rejected the fee petition on the basis that plaintiffs could not show a sufficient "causal nexus" between the prosecution of their appeal and the ultimate relief obtained.

■ The administrative judge's finding in this respect was clearly erroneous. OSM's First Memorandum dated April 5, 1993 set forth a few procedural guidelines for extensions of time, and indicated that a more detailed "directive" would be developed in the future. However, the scope and timing of this "directive" was ambiguous. OSM's subsequently issued informal review decision on April 30, 1993 granted plaintiffs substantial substantive relief, but, if anything, retreated from the First Memorandum by stating only that OSM was "considering" additional guidance to Field Offices on the procedural issues. Plaintiffs filed their appeal to the Board on May 10, 1993, seeking procedural relief which OSM through its First Memorandum and informal review decision had failed to grant. Although plaintiffs did obtain substantive relief prior to their appeal,[3] they did not obtain substantial relief on the myriad of procedural issues until OSM issued its Second Memorandum on July 27, 1993—several months after the appeal was filed.

The administrative judge concluded that plaintiffs should not be awarded fees, notwithstanding the issuance of the Second Memorandum granting substantial relief, because "the actions taken by OSM including the [First Memorandum] ... essentially complied with petitioner's requests." The administrative judge did not find persuasive the plaintiffs' argument that the Second Memorandum awarded substantial procedural relief, concluding that the relief granted had been foreshadowed by the First Memorandum and "was clearly in development prior to the appeal."

This court comes to a different decision. A comparison of the First and Second Memoranda issued by OSM reveals a striking dissimilarity. Far more extensive procedural relief was obtained by the plaintiffs through the issuance of the Second Memorandum. To say that this relief was foreshadowed by the First Memorandum or the subsequent informal review decision, which promised only to "consider" unspecified additional relief, gives OSM too much and plaintiffs too little. Nor can the procedural relief obtained by plaintiffs after they filed their appeal be said to be inconsequential merely because the substantive issues had previously been resolved. The procedural relief outlined in the Second Memorandum is far-reaching in both scope and application. The timing alone of the issuance of the Second Memorandum raises an inference that plaintiffs' appeal was causally related to the relief obtained.

The defendant's only argument that the two were not causally related is that, based on language in the First Memorandum and the informal review decision, some additional procedural guidance likely would have been forthcoming. However, based on the timing, type, and scope of relief ultimately outlined in the Second Memorandum, it is clear that

---

**3.** Plaintiffs may have received additional substantive relief by virtue of the settlement between Kentucky and Branham & Baker executed on May 28, 1993; however, plaintiffs do not argue that their appeal of the procedural issues forced that settlement.

plaintiff's appeal did bear a causal relationship to the relief obtained. The totality of circumstances leading up to the appeal, including the many inordinate delays prior to the award of substantive relief, leads to the conclusion that appeal of the unresolved procedural issues was necessary. What should have been a prompt investigation by the LFO of an easily determinable fact (Branham & Baker's ownership interest in Deep River) became a procedural quagmire which ultimately resulted in significant policy changes by the OSM governing its investigative process. In light of the fact that the plaintiffs' appeal was necessary and causally related to the relief awarded, they are entitled to fees for both the costs and expenses of their voluntarily dismissed appeal, and the preliminary informal proceedings leading up to that appeal.

As the Board's denial of award of attorneys' fees was clearly erroneous, the petition for fees will be remanded to the Secretary for determination of an appropriate award.

## C. Prior Unpublished Case law

This court would be remiss if it failed to discuss the unpublished opinion in *Council of Southern Mountains, Inc. v. Watt*, No. 82–45, 1982 WL 17512 (E.D.Ky. Oct.18, 1982) (found at 13 Envt'l L. Rep. 20393). Although plaintiffs heavily rely on the decision, I do not rely on it to hold that plaintiffs may recover their fees in this case.

In *Council*, plaintiffs filed several citizens' complaints with OSM after which OSM issued certain enforcement orders. Not fully satisfied, the plaintiffs appealed to the Board seeking additional enforcement. However, the plaintiffs and the offending company thereafter entered into a settlement, to which OSM was not a party, and the plaintiffs withdrew their appeal before the Board. The plaintiffs subsequently filed suit seeking attorneys fees for the initial filing of their complaints, their appeal to the Board, and their settlement negotiations with the company.

The court held that the plaintiffs could not recover fees for either their appeal before the Board (because in the court's view there was no final order),[4] or for the settlement negotiations. However, the court awarded plaintiffs their fees for the filing of the citizens complaints, apparently concluding (without discussion) both that the informal proceedings before the OSM constituted qualifying "administrative proceedings" under § 525(e), and that the OSM's enforcement orders constituted "final orders" under the Act.

The Sixth Circuit has held that an unpublished decision "has no precedential power." *Brown v. Crowe*, 963 F.2d 895, 897 n. 2 (6th Cir.1992). There is an exception to the rule where a case has clear precedential value in relation to a material issue in the case and no published opinion would serve as well. *Baer v. R & F Coal Co.*, 782 F.2d 600, 602 (6th Cir.1986) (construing former 6th cir. R. 24(b)) [subsequently repromulgated as 6th Cir. R. 24(c)]. However, *Council* does not clearly address the issues in this case and fails to clearly state the basis for its result. *Council*'s apparent conclusion that OSM enforcement orders constitute final "orders" under § 525(e) is contrary to the Secretary's regulations in 40 C.F.R. § 4.1290. Because I believe that *Council*'s conclusion that the mere filing of a citizens complaint constitutes a qualifying administrative proceeding is similarly flawed, this court respectfully declines to follow that decision.

## III. CONCLUSION

IT IS ORDERED THAT plaintiffs' motion for leave to file a surreply [Doc. # 26] is GRANTED and the surreply shall be FILED. For the reasons stated herein, IT IS FURTHER ORDERED THAT plaintiffs' motion for summary judgment [Doc. # 17] be GRANTED and defendant's cross-motion for summary judgment [Doc. # 20] be DENIED.

---

**4.** This conclusion is contrary to the Board's decision in this case that an order of voluntary dismissal does constitute a qualifying final "order."