**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 12-1446 and 12-1903

———————

KAREN CAMESI; ERIN O'CONNELL;
LORI SHAFFER; DINAH BAKER,
on behalf of themselves and all other employees
similarly situated,

Appellants in Case No. 12-1446

v.

UNIVERSITY OF PITTSBURGH MEDICAL CENTER;
UPMC; UPMC HEALTH SYSTEM; UPMC BEDFORD
MEMORIAL HOSPITAL; UPMC BRADDOCK; UPMC
MCKEESPORT; UPMC NORTHWEST; UPMC
PASSAVANT; UPMC PRESBYTERIAN; UPMC
PRESBYTERIAN SHADYSIDE; UPMC SHADYSIDE;
UPMC SOUTHSIDE; UPMC ST. MARGARET;
MAGEE WOMEN'S HOSPITAL OF UPMC; MERCY
HOSPITAL OF PITTSBURGH; MONTEFIORE
HOSPITAL; MONTEFIORE UNIVERSITY HOSPITAL;
WESTERN PSYCHIATRIC INSTITUTE AND CLINIC;
CHILDREN'S HOSPITAL OF PITTSBURGH OF THE
UPMC HEALTH SYSTEM; UPMC LEE; UPMC
HORIZON; UPMC HOLDING COMPANY, INC.;

UPMC HEALTH NETWORK, INC.; JEFFREY A. RAMOFF; GREGORY PEASLEE; UPMC 401A RETIREMENT SAVINGS PLAN; UPMC 403B RETIREMENT SAVINGS PLAN; UPMC BASIC RETIREMENT PLAN


ANDREW KUZNYETSOV; CHARLES BOAL; MARTHANN HEILMAN,

Appellants in Case No. 12-1903

v.

WEST PENN ALLEGHENY HEALTH SYSTEM, INC; THE WESTERN PENNSYLVANIA HEALTHCARE SYSTEM, INC.; ALLE-KISKI MEDICAL CENTER; ALLEGHENY GENERAL HOSPITAL; ALLEGHENY GENERAL HOSPITAL-SUBURBAN CAMPUS; CANONSBURG GENERAL HOSPITAL; THE WESTERN PENNSYLVANIA HOSPITAL; CHRISTOPHER T. OLIVIA; JOHN LASKY; RETIREMENT PLAN FOR EMPLOYEES OF WEST PENN ALLEGHENY HEALTH SYSTEM; ALLE-KISKI MEDICAL ASSOCIATES; ALLE-KISKI WOMEN'S HEALTH; ALLEGHENY MEDICAL PRACTICE NETWORK; ALLEGHENY SINGER RESEARCH INSTITUTE; ALLEGHENY SPECIALTY PRACTICE NETWORK; ALLEGHENY VALLEY INTERNAL MEDICINE; ASSOCIATED SURGEONS OF WESTERN PENNSYLVANIA; ASSOCIATED SURGEONS OF WESTERN PENNSYLVANIA P.C.; BARRY SEGAL, MD;

BELLEVUE MEDICAL ASSOCIATES; BELLEVUE PEDIATRIC ASSOCIATES; BURN CARE ASSOCIATES, LTD.; BURRELL INTERNAL MEDICINE; CABOT MEDICAL CENTER; CANONSBURG COMMUNITY HEALTHCARE CENTER; CENTER FOR FAMILY HEALTH CARE; CENTURY MEDICAL ASSOCIATES; CENTURY III MEDICAL ASSOCIATES; CITIZENS SCHOOL OF NURSING; CORKERY, HEISE, DAINESI & TRAPANOTTO; CRAFTON MEDICAL CENTER; CREIGHTON MEDICAL CENTER; DR. FRANCIS J. CAVANAUGH, MD; DR. MEHERNOSH KHAN; EAST END MEDICAL ASSOCIATES; EAST SUBURBAN FAMILY PRACTICE; EAST SUBURBAN OB/GYN; FAMILY NURSE MIDWIVES; FERLAN GROUP; FRIENDSHIP MEDICAL ASSOCIATES; FORBES HOSPICE; FUGE FAMILY PRACTICE; GREEN TREE MEDICAL CENTER ASSOCIATES; HAMPTON MEDICAL CENTER; HEALTH CENTER ASSOCIATES; HUSSAINI MEDICAL ASSOCIATES; IRWIN MEDICAL CENTER; IRWIN PRIMARY CARE ASSCOCIATES; MAMATASTRAGOOR KHAN PRIMARY CARE ASSOCIATES; MCDONALD PRIMARY CARE; MEADOWLANDS PRIMARY CARE; MEDICAL CENTER CLINIC, P.C.; META-HILBERG HEMATOLOGY ONCOLOGY ASSOCIATES, INC.; MONROEVILLE MEDICAL ASSOCIATES; M.H.V. MURTHY, MD; NATRONA HEIGHTS OB/GYN, INC.; NORTH VERSAILLES MEDICAL ASSOCIATES; PAUL REILLY, MD; PEDIATRIC & NEONATAL ASSOCIATES; PEDIATRIC & NEONATAL ASSOCIATES, INC.; PENN HILLS MEDICAL ASSOCIATES; PENNSYLVANIA COMPREHENSIVE CARE ASSOCIATES; PINE HOLLOW MEDICAL ASSOCIATES; PINE RICHLAND

MEDICAL ASSOCIATES; PITTSBURGH CARDIO THORACIC ASSOCIATES; PITTSBURGH CARDIOTHORACIC ACCOCIATES; PLUM MEDICAL ASSOCIATES; PRIMARY CARE NORTHSIDE; PRIMAMRY CARE SOUTH; RIAD SARADAR, MD; ROBERT BARAFF, MD; FRANK E. SESSOMSM.D., INC; STERLING MEDICAL ASSOCIATES; THREE RIVERS IMAGING ASSOCIATES, P.C.; TRI COUNTY CARDIOLOGY; TRI COUNTY CARDIOLOGY, INC.; UNITED PHYSICIANS; VASCULAR CENTER OF WESTERN PENNSYLVANIA, INC.; WATERDAM MEDICAL ASSOCIATES; WEST PENN ALLEGHENY EYE ASSOCIATES, P.C.; WEST PENN ALLEGHENY FOUNDATION, LLC; WEST PENN ALLEGHENY HEALTH SYSTEM, INC. (CORP); WEST PENN ALLEGHENY HEALTH SYSTEM, INC. (NON PROFIT CORP); WEST PENN ALLEGHENY HEALTH SYSTEM PRIMARY CARE NETWORK; WEST PENN ALLEGHENY ONCOLOGY NETWORK; WEST PENN ALLEGHENY PHYSICIANS, LLC; WEST PENN ALLEGHENY SENIOR CARE; WEST PENN BREAST SURGERY PRACTICE; WEST PENN COMPREHENSIVE HEALTH CARE, P.C.; WEST PENN CORPORATE MEDICAL SERVICES, INC.; WEST PENN FAMILY PRACTICE; WEST PENN INTERNAL MEDICINE ASSOCIATES; WEST PENN PHYSICIANS' ORGANIZATION; WEST PENN PHYSICIAN PRACTICE NETWORK; WEST PENN PLASTIC & RECONSTRUCTIVE SURGERY; WEST PENN PLASTIC SURGERY; WEST PENN SURGICAL SUPPLY CO.; WEST PENN SPECIALTY MSO, INC.;

WEST VIEW FAMILY HEALTH ASSOCIATES; THE
WESTERN PENNSYLVANIA BURN FOUNDATION;
WESTERN PENNSYLVANIA CANCER INSTITUTE;
THE WESTERN PENNSYLVANIA CARDIOVASCULAR
INSTITUTE; WESTERN PENNSYLVANIA DIAGNOSTIC
CLINIC; WESTERN PENNSYLVANIA HEART PLAN
INC.; THE WESTERN PENNSYLVANIA HOSPITAL
FOUNDATION;THE WESTERN PENNSYLVANIA
HOSPITAL-FORBES REGIONAL CAMPUS;
THE WESTERN PENNSYLVANIA HOSPITAL SCHOOL
OF NURSING; THE WESTERN PENNSYLVANIA
HOSPITAL SKILLED NURSING FACILITY;
WESTERN PENNSYLVANIA OB/GYN ASSOCIATES;
THE WESTERN PENNSYLVANIA RESEARCH
INSTITUTE; WEXFORD MEDICAL PRACTICE;
WEXFORD WEIGHT LOSS

---

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court Nos. 3-09-cv-00085 and 2-10-cv-00948)
District Judges: Honorable Cathy Bisson and Honorable
Donetta W. Ambrose

---

Argued March 6, 2013

Before:  RENDELL, AMBRO and VANASKIE, Circuit
Judges

(Opinion Filed: September 4, 2013)

5

Jared K. Cook, Esquire
Justin M. Cordello, Esquire
Michael J. Lingle, Esquire
Patrick Solomon, Esquire
J. Nelson Thomas, Esquire **(Argued)**
Thomas & Solomon
693 East Avenue
New York, NY   14607

Counsel for appellants in case 12-1446 and case 12-1903


Wendy W. Feinstein, Esquire
Mariah L. Klinefelter, Esquire
John J. Myers, Esquire **(Argued)**
Andrew T. Quesnelle, Esquire
Mark A. Willard, Esquire
Eckert, Seamans, Cherin & Mellot
600 Grant Street
44th Floor, U. S. Steel Tower
Pittsburgh, PA   15219

Counsel for appellees in case 12-1446

Alexandra Bak-Boychuk, Esquire
David S. Fryman, Esquire (**Argued**)
William K. Kennedy, II, Esquire
John B. Langel, Esquire
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA   19103

Robert B. Cottington, Esquire
Cohen & Grigsby
625 Liberty Avenue
Pittsburgh, PA   15222

Counsel for appellees in case 12-1903

---

O P I N I O N

---

**RENDELL**, Circuit Judge:

In this consolidated appeal we consider whether named plaintiffs may appeal a district court order denying final certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (2007). The named plaintiffs voluntarily dismissed their individual claims with prejudice but seek to pursue an appeal on behalf of others who opted into the litigation before the District Court. We conclude that the named plaintiffs lack final orders appealable under 28 U.S.C. § 1291. Thus, we will dismiss these appeals for lack of jurisdiction.

# I.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other "similarly situated" employees. *Id.* In order to become parties to a collective action under Section 16(b), employees must affirmatively opt-in by filing written consents with the court. 29 U.S.C. § 216(b). This feature distinguishes the collective-action mechanism under Section 16(b) from the class-action mechanism under Federal Rule of Civil Procedure 23, where, once the class is certified, those not wishing to be included in the class must affirmatively opt-out.

Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012). Applying a "fairly lenient standard" at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a "modest factual showing" that the employees identified in their complaint are "similarly situated." *Id.* at 536 & n.4. If the plaintiffs have satisfied their burden, the court will "conditionally certify" the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery. *Id.* at 536. At the second stage, with the benefit of discovery, "a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective

8

action is in fact similarly situated to the named plaintiff." *Genesis Healthcare Corp. v. Symczyk*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, *Symczyk*, 133 S. Ct. at 1526. This step may be triggered by the plaintiffs' motion for "final certification," by the defendants' motion for "decertification," or, commonly, by both. If the plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action. *Id*.

It is under this framework that Appellants brought their actions.

**II.**

The first consolidated action was commenced on April 2, 2009, by Karen Camesi, Erin O'Connell, Dinah Baker, and Lori Shaffer (the "Camesi Named Plaintiffs") against UPMC and multiple related entities (collectively, "UPMC") in the United States District Court for the Western District of Pennsylvania on behalf of themselves and "similarly situated" individuals. (Camesi J.A. at A-40). They alleged that their employer, UPMC, violated the FLSA by failing to ensure that they were paid for time worked during meal breaks. Upon filing their complaint, the Camesi Named Plaintiffs moved for expedited conditional certification. (*Id*.) The motion was granted in May 2009, notice was directed to potential collective-action members, and 3,115 individuals opted into the lawsuit. (Camesi Br. Appellee at 5). After preliminary discovery, UPMC filed a motion to decertify the collective action and the Camesi Named Plaintiffs filed a motion for final certification. (Camesi J.A. at A-114-16). The District Court granted UPMC's motion and denied the Camesi Named Plaintiffs' motion on December 20, 2011, and dismissed the

9

claims of the opt-in plaintiffs without prejudice. (*Id.* at A-1). The Camesi Named Plaintiffs did not ask the District Court to certify its interlocutory December 20, 2011 order for appeal, but, instead, moved under Federal Rule of Civil Procedure 41(a) for "voluntary dismissal of their claims with prejudice in order to secure a final judgment for purposes of appeal." (*Id.* at A-1565). The District Court granted the unopposed motion on January 30, 2012, stating that "Plaintiffs' remaining claim are hereby dismissed with prejudice in order to allow Plaintiffs to seek appellate review." (*Id.* at A-96).

In the other consolidated action, Andrew Kuznyetsov, Charles Boal, and Marthann Heilman (the "Kuznyetsov Named Plaintiffs," or collectively with Camesi Named Plaintiffs, "Appellants"), filed individual and collective actions in the United States District Court for the Western District of Pennsylvania against their employer, West Penn Allegheny Health System, Inc. and other related defendants (collectively, "West Penn," or collectively with UPMC, "Appellees"), on April 1, 2009. Their complaint similarly alleged that they were not compensated for work performed during meal breaks in violation of the FLSA. (Kuznyetsov Br. Appellants at 3; Br. West Penn at 3). The District Court conditionally certified the collective action and facilitated notice to potential collective-action members, 820 of whom opted into the lawsuit. (Br. West Penn at 4). On December 20, 2011, the District Court decertified the class on West Penn's motion and denied the Kuznyetsov Named Plaintiffs' motion for final certification. (Kuznyetsov App. at A15). Then, on February 29, 2012, the District Court granted the Kuznyetsov Named Plaintiffs' motion under Rule 41(a) for "voluntary dismissal of their claims with prejudice in order to secure a final judgment for purposes of appeal," and also dismissed

10

the claims of the opt-in plaintiffs without prejudice. (Pls.' Mot. for Vol. Dismissal with Prejudice for Purposes of Appeal at 1, No. 10-0948, Doc. No. 145; Kuznyetsov App. at A17).

Both sets of named plaintiffs now appeal. Because both cases raise the same issue, we have consolidated them before us.

### III.

We begin by considering whether Appellants' voluntary dismissal of their claims with prejudice under Rule 41(a) left them with a final order appealable under 28 U.S.C. § 1291. This question of first impression requires us to consider the scope of two strands of Third Circuit authority: *Sullivan v. Pacific Indemnity Co.*, 566 F.2d 444 (3d Cir. 1977), in which we held that a plaintiff may not obtain appellate review after incurring a dismissal for failure to prosecute for the purpose of seeking to appeal an interlocutory class-certification order, and *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150 (3d Cir. 1986), in which we permitted plaintiffs to voluntarily dismiss a portion of their case in order to appeal an order of the district court terminating the remainder of their case. In considering the significance of these cases, we bear in mind that, while an appeal from a final judgment necessarily, and permissibly, appeals prior orders of the district court, Appellants here seek review of only the orders decertifying their collective actions, and do not complain of the "final" orders that dismissed their cases.

We have jurisdiction under 28 U.S.C. § 1291 to review "final decisions" of the district courts. *Giles v. Campbell*, 698 F.3d 153, 157 (3d Cir. 2012). "'A 'final decision' generally is one . . . [that] ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Harris v. Kellogg Brown & Root Servs.*, 618 F.3d 398, 400 (3d Cir. 2010) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The finality rule guards against piecemeal litigation. *Giles*, 698 F.3d at 157.

Generally, a dismissal with prejudice constitutes an appealable final order under § 1291. *See, e.g.*, *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007). Furthermore, "[u]nder the 'merger rule,' prior interlocutory orders [such as class-certification decisions] merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996). Even so, Appellees urge that Appellants' voluntary dismissals of their claims constitute impermissible attempts to manufacture finality under *Sullivan*. We agree.

In *Sullivan*, the plaintiffs brought a class action under Rule 23. 566 F.2d at 444-45. On the day *Sullivan* was scheduled for trial, the district court denied the plaintiffs' motion to certify a class action. *Id*. at 445. The plaintiffs, in turn, refused to present any evidence at trial and the district court dismissed their claims under Rule 41(b) for failure to prosecute. *Id*. The plaintiffs then sought review of the denial of class certification by our Court, arguing that the dismissal for failure to prosecute was a final order appealable pursuant to § 1291. *Id*.

12

We began our opinion by noting that a "class certification decision, per se, is not an appealable final order under 28 U.S.C. § 1291," but rather is an interlocutory order. *Id.* We characterized the dismissal for failure to prosecute "as an attempt to avoid this [C]ourt's firm position against interlocutory appeals of class certification determinations." *Id.* Such a "strategy," this Court reasoned, was impermissible because "'[i]f a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened.'" *Id*. at 445 (quoting *Marshall v. Sielaff*, 492 F.2d 917, 919 (3d Cir. 1974)). Allowing such a practice would risk "inundati[ng] . . . appellate dockets with requests for review of interlocutory orders and . . . [could] undermine the ability of trial judges to achieve the orderly and expeditious disposition of cases.'" *Id*. at 445-46. Therefore, we dismissed the appeal for lack of an appealable order.[1]

---

[1] Additionally, Appellees emphasize that the United States Courts of Appeals for the Sixth and Ninth Circuits have also concluded that plaintiffs may not appeal a dismissal for lack of prosecution where the plaintiffs caused that dismissal in order to appeal. *See Huey v. Teledyne, Inc*., 608 F.2d 1234, 1236 (9th Cir. 1979) (concluding that reviewing the denial of class-action certification after plaintiff's action was dismissed for failure to prosecute would violate the spirit of *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), in which the Court held that a decertification order was not an appealable final order); *Hughley v. Eaton Corp*., 572 F.2d 556, 557 (6th Cir. 1978) (holding that dismissal for failure to prosecute rendered

We believe that *Sullivan* is so similar to the cases before us as to be controlling. In the past, we have "looked to Rule 23 decisions by analogy in determining appealability" of orders in FLSA collective actions. *Lusardi v. Lechner*, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988). We find it appropriate to do so here because an order decertifying a Section 16(b) collective action is interlocutory, just like a certification decision is in the Rule 23 context. *Id*. at 1067-68.

Like the plaintiffs in *Sullivan*, Appellants have attempted to short-circuit the procedure for appealing an interlocutory district court order that is separate from, and unrelated to, the merits of their case. Appellants could have obtained appellate review of the decertification order by proceeding to final judgment on the merits of their individual claims. Or, Appellants could have asked the District Courts to certify their interlocutory orders for appeal. But Appellants instead sought to convert an interlocutory order into a final appealable order by obtaining dismissal under Rule 41. If we were to allow such a procedural sleight-of-hand to bring about finality here, there is nothing to prevent litigants from employing such a tactic to obtain review of discovery orders, evidentiary rulings, or any of the myriad decisions a district court makes before it reaches the merits of an action. This would greatly undermine the policy against piecemeal litigation embodied by § 1291.

Appellants counter that *Sullivan* is inapposite and we should instead follow the approach we followed in *Fassett*, 807 F.2d at 1154, and *Trevino-Barton v. Pittsburgh National*

---

moot any prior ruling of the district court). We read these cases as consistent with *Sullivan*.

*Bank*, 919 F.2d 874, 878 (3d Cir. 1990). But *Fassett* and *Trevino-Barton* are clearly distinguishable. In *Fassett*, the question of finality arose after the plaintiff elected to dismiss her claim against the sole defendant who remained following the district court's entry of summary judgment in favor of all other original defendants. 807 F.2d at 1154-55. Although the dismissal of the remaining defendant was without prejudice, we concluded that the order was nevertheless final and appealable because the statute of limitations had run on the claims against that defendant. *Id.* Similarly, in *Trevino-Barton*, 919 F.2d at 878, we allowed an appeal where a plaintiff agreed to abandon the single count of her complaint that she had voluntarily dismissed without prejudice following the district court's entry of summary judgment in favor of the defendants on all of the remaining counts of her complaint. *Id.*; *see also O'Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88 (3d Cir. 1989) (holding same).[2] In both of these

---

[2] Appellants also invoke a slew of out-of-circuit precedent following a similar approach. Not only are these cases not binding in the Third Circuit, they are also clearly distinguishable. *Compare Helm Fin. Corp. v. MNVA R.R.*, 212 F.3d 1076, 1079 (8th Cir. 2000) (allowing appeal following voluntary dismissal of claims where the district court's earlier order denying plaintiff summary judgment on those claims effectively terminated the claims), *and St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 961 (Fed. Cir. 1992) (permitting an appeal where plaintiff dismissed her complaint following the district court's denial of leave to amend by adding additional claims), *with John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 108 (1st Cir. 1998) (refusing to permit an appeal of

15

cases, all of the claims had effectively been barred either by the court or as a matter of law, and, importantly, it was the court's grant of summary judgment against the plaintiff as to the merits of most of the claims that was the subject of the appeal. Here, the subject of the appeal is not the dismissal, but rather, the decertification order.

Appellants read *Fassett* and *Trevino-Barton* as establishing a rule that "a voluntary dismissal under Rule 41(a), sought to obtain appellate review, is a final appealable order." (Appellants' Resp. to Appellees' Mot. to Dismiss the Appeal at 5). But neither case holds so broadly. Instead, we understand *Fassett* and *Trevino-Barton* to stand for the proposition that when a plaintiff has suffered an adverse judgment *on the merits* as to claims or defendants A, B, and C, which would otherwise be final and appealable were it not for remaining claim or defendant D, he or she may elect to forgo D in order to obtain review of the order respecting A, B, and C. Neither case permits a plaintiff who has suffered an adverse decision *collateral* to the merits of A, B, C, and D to throw out his or her entire action to obtain review of that interlocutory ruling. That, of course, is exactly what happened here, where there was clearly no judgment on the merits. But even *Fassett* cautioned against this, stating that this Court "will not permit an indirect review of interlocutory rulings that may not be subject to direct review." 807 F.2d at 1155. Thus, Appellants' reliance on *Fassett* and *Trevino-Barton* is misplaced.

---

interlocutory orders following dismissal for failure to prosecute).

In sum, the District Courts' orders decertifying the collective actions were interlocutory. Appellants were not entitled to appeal these orders directly under § 1291. Nor can Appellants avoid the strong presumption against interlocutory review of such orders by voluntarily dismissing all of their claims under Rule 41. Thus, these appeals must be dismissed for lack of appellate jurisdiction.

**IV**.

Appellees urge an alternative bar to our exercise of jurisdiction over the review sought by Appellants, namely that, even if we were to find finality, Appellants' voluntary relinquishment of their individual claims has rendered the cases moot.

Article III requires "that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Symczyk*, 133 S. Ct. at 1528 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). An action is rendered moot when "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation." *Id*. (quoting *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477-78 (1990)).

We understand Appellants' argument to be that they continue to maintain a personal stake in the outcome of the litigation because, as a result of (and notwithstanding) their dismissal of their claims with prejudice, "their individual claims are now tied to the outcome of this appeal." (Kuznyetsov Resp. to West Penn Mot. 12-14). Appellants apparently believe that reversal of the District Courts'

decertification orders on appeal would resurrect their individual claims once again at the district court level. However, this reflects a fundamental misunderstanding of the nature of a dismissal with prejudice. The claims that Appellants dismissed with prejudice are gone forever—they are not reviewable by this Court and may not be recaptured at the district court level. *See Fairley v. Andrews*, 578 F.3d 518, 522 (7th Cir. 2009) (holding that where a litigant voluntarily dismisses a portion of their claims in order to secure an appeal, those dismissed claims are extinguished forever), *see also Dannenberg v. Software Toolworks*, 16 F.3d 1073, 1077 (9th Cir. 1994) (concluding that a party may not revive claims dismissed for the purposes of establishing a final appealable order). As such, Appellants' individual claims are moot.

The question then becomes whether, in the absence of any individual claim, Appellants nonetheless retain a personal stake in the outcome of the litigation sufficient to prevent the entire action from being rendered moot because they claim an interest in representing others who have opted into the collective action.

We note that the issue of a named plaintiff's ability to maintain actions in a representative capacity in collective actions brought under the FLSA, as compared to Rule 23 class actions, is in a state of flux. The Supreme Court has recently reinforced its view that these procedural mechanisms are essentially different. *See Symczyk*, 133 S. Ct. at 1529. What remains unclear, however, is whether the fact that individuals have already opted into Appellants' actions by filing written consents with the District Courts following conditional certification would permit Appellants to retain a justiciable interest in the litigation based on their

18

representative capacities. We need not decide whether it may, however, because we believe that the unique fact pattern here—namely, Appellants' voluntary dismissal of their claims with prejudice—has not only extinguished Appellants' individual claims, but also any residual representational interest that they may have once had. *Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839, 844 (8th Cir. 2013) (holding that a Rule 23 named plaintiff's acceptance of a settlement offer as to his individual claims mooted his interest in the denial of class certification); *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 100 (4th Cir. 2011) ("[W]hen a putative class plaintiff voluntarily dismisses the individual claims underlying a request for class certification, . . . there is no longer a self-interested party . . . necessary to satisfy Article III standing."); *cf. Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 706 (6th Cir. 2009) ("Since the plaintiffs no longer have an interest in shifting . . . costs to the putative class members [following settlement of their claims], the court cannot avoid the conclusion that this case is moot."). This is so because it would be anomalous to conclude that Appellants are "similarly situated" to opt-in plaintiffs who, unlike Appellants, have actually retained their individual claims. Without any personal stake in the matter, Appellants should not be permitted to represent opt-in plaintiffs. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 878 (6th Cir. 2012) ("[A] lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim."); *Grace v. Family Dollar Stores, Inc*., 637 F.3d 508, 519 (4th Cir. 2011) (holding same).

Therefore, we will leave for another day the difficult question of whether an interest in representing opt-in

collective-action plaintiffs alone may satisfy the personal-stake requirement of Article III.

## V.

For the reasons discussed above, we will dismiss both appeals for lack of jurisdiction.